

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-1996

# Kurz v. Phila Elec Co

Precedential or Non-Precedential:

Docket 95-1795,95-1796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Kurz v. Phila Elec Co" (1996). *1996 Decisions.* Paper 37.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/37

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1795 and 95-1796


DONALD R. KURZ; WILLIAM ANDERSON; JAMES E.W.
BECK; WILLIAM T. BERGEN; CHARLES W. BOWDEN;
WILLIAM H. BROWN; RICHARD CAHILL; ARMANDO L. CAPOFERRI;
ROBERT C. DEMARCO; JAMES J. DILOLLE, SR.; VINCENT J.
DIMAGGIO; JOHN J. DIVALENTINO, JR.; WILLIAM E. DRUMEL;
VICTOR J. GIBIALANTE; FRANCIS T. GOLDEN; JAMES J.
GRANGER; ELMER D. GREIM, JR.; JAMES H. HAIR; JOHN M.
HOOPES; BENJAMIN J. KILIAN; GEORGE C. LINTHICUM;
HUBERT A. MCKOWN, JR.; HENRY P. MCNAMEE;
OLIVER K. MESSNER; ROBERT E. MILLER; JOHN A. MORSE;
SAMUEL J. MULLEN; JOHN A. MUNLEY; STANLEY B. MYERS;
JOHN J. NUSSPICKEL; JAMES W. PATTERSON; ALFRED B.
SCHUMANN; JOSEPH C. SHARKEY; WILLIAM H. SMOYER;
WOODROW E. SNYDER; JAMES D. SUTLIFF; EDWARD J. VETNER;
DOMINIC C. VIGLIANESE; G. EARLE WATT; FREDERICK
W. WINTERLING; JOHN R. YOUNG

v.

PHILADELPHIA ELECTRIC COMPANY; SERVICE ANNUITY
PLAN OF PHILADELPHIA ELECTRIC COMPANY; CHARLES L.
FRITZ; J.L. EVERETT, III; JOHN H. AUSTIN, JR.

JOHN J. DIVALENTINO, JR., WILLIAM E. DRUMEL;
JOHN A. MORSE; SAMUEL J. MULLEN; STANELY B. MYERS;
DOMINIC C. VIGLIANESE; JAMES J. DILOLLE; BENJAMIN
J. KILIAN; CHARLES W. BOWDEN; ELMER D. GREIM, JR.;
FREDERICK W. WINTERLING; JAMES W. BECK; JAMES H. HAIR;
ROBERT C. DEMARCO; ALFRED G. SCHUMANN; RICHARD CAHILL;
JAMES W. PATTERSON; JOHN M. HOOPES; HUBERT A. MCKOWN,
JR.; ROBERT E. MILLER; JAMES D. SUTLIFF; HENRY P.
MCNAMEE; FRANCIS T. GOLDEN; WILLIAM T. BERGEN;
GEORGE C. LINTHICUM; WILLIAM W. ANDERSON: JOHN R.
YOUNG; VINCENT J. DIMAGGIO; SHIELDS L. DALTROFF;
RICHARD O. FOLKMAN; ALFRED E. STAVOLA; ROBERT H.C.
LESS; SAMUEL E. BELL; DONALD F. WASHINGTON; FRANK
J. GALLAGHER; MAURICE M. PEITZMAN; HARRY G. TURNER,
JR.; ROBERT I. FRIEND; DONALD C. ROBINSON;
WILLIAM J. LEAMAN, JR.; AUGUSTUS W. O'MALLEY; DALLAS
S. SCOTT, JR.; JOHN S. STILLWAGON; ROBERT C. HECKESSER;
WILLIAM R. TRAVETTI; WILLIAM B. HORLOCK; JAMES STATES;
THOMAS W. RAYER; JOHN H. VONRHINE; WALTER ALLWOERDEN;
GEORGE C. WIEDERSUM, JR.; JAMES R. MCCARRON; SALVATOR
J. DESTEFANO; JOHN C. GARVIN; A. WILLIAM LANCASTER;
JOSEPH A. FOCHT; ROBERT MITCHELL; JOSEPH P. SUBRANNI;

JOHN F. CRAWFORD; WILLIAM G. TAYLOR; KENNETH R. SEDGLEY, JR., IRWIN G. BLACKBURN; CHARLES R. CAREY; JOHN R. YOUNG; JESSEE E. GRAY, JR.; JAMES D. DERSTINE; ALLEN H. BRAID; PAUL L. THOMAS; STEPHEN MICKLOSH, JR.; WILLIAM L. GIBBONS; RUSSELL B. MURRAY; ROLAND J. MARKUN; ERNEST W. BEAM; RAYMOND W. SCHOLL, JR.; JOHN F. PARKER; JOSEPH F. MCBRIDE; VINCENT S. BOYER; MARTIN M. MORGAN and DAVID MONZO,

Appellants in 95-1795

--------------------

DONALD R. KURZ; WILLIAM ANDERSON; JAMES E.W. BECK; WILLIAM T. BERGEN; CHARLES W. BOWDEN; WILLIAM H. BROWN; RICHARD CAHILL; ARMANDO L. CAPOFERRI; ROBERT C. DEMARCO; JAMES J. DILOLLE, SR.; VINCENT J. DIMAGGIO; JOHN J. DIVALENTINO, JR.; WILLIAM E. DRUMEL; VICTOR J. GIBIALANTE; FRANCIS T. GOLDEN; JAMES J. GRANGER; ELMER D. GREIM, JR.; JAMES H. HAIR; JOHN M. HOOPES; BENJAMIN J. KILIAN; GEORGE C. LINTHICUM; HUBERT A. MCKOWN, JR.; HENRY P. MCNAMEE; OLIVER K. MESSNER; ROBERT E. MILLER; JOHN A. MORSE; SAMUEL J. MULLEN; JOHN A. MUNLEY; STANLEY B. MYERS; JOHN J. NUSSPICKEL; JAMES W. PATTERSON; ALFRED B. SCHUMANN; JOSEPH C. SHARKEY; WILLIAM H. SMOYER; WOODROW E. SNYDER; JAMES D. SUTLIFF; EDWARD J. VETNER; DOMINIC C. VIGLIANESE; G. EARLE WATT; FREDERICK W. WINTERLING; JOHN R. YOUNG

v.

PHILADELPHIA ELECTRIC COMPANY; SERVICE ANNUITY PLAN OF PHILADELPHIA ELECTRIC COMPANY; CHARLES L. FRITZ; J.L. EVERETT, III; JOHN H. AUSTIN, JR.

Peco Energy Company, formerly Known as Philadelphia Electric Company, Service Annuity Plan of Philadelphia Electric Company, Charles L. Fritz, J.L. Everett, III and John H. Austin, Jr.

Appellants in 95-1796

On Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 91-cv-02771)

Argued April 29, 1996

          Before:  COWEN and ROTH, Circuit Judges
and CINDRICH, District Judge

              (Opinion filed October 1, 1996)



Ronald L. Wolf, Esq.
Martina W. McLaughlin, Esq. (Argued)
Litvin, Blumberg, Matusow & Young
1339 Chestnut Street
The Widener Building, 18th Floor
Philadelphia, PA  19107

          Attorneys for Appellants in 95-1795
           and for Cross-Appellees in 95-1796

David H. Marion, Esq.
David Zalesne, Esq. (Argued)
Howard J. Bashman, Esq.
Montgomery, McCracken, Walker & Rhoads
Three Parkway, 20th Floor
Philadelphia, PA  19102

          Attorneys for Appellees in 95-1795
           For Cross-Appellants in 95-1796

                    OPINION OF THE COURT



ROTH, Circuit Judge:
     This appeal marks the second time this case has reached this court.  In its first incarnation, Kurz v. Philadelphia Elec. Co., 994 F.2d 136 (3d Cir.) ("Kurz I"), cert. denied, 510 U.S. 1020 (1993), we reversed the district court's grant of summary judgment to defendant Philadelphia Electric Co. ("PECo"). Applying the rule established in Fischer v. Philadelphia Elec. Co., 994 F.2d 130 (3d Cir.) ("Fischer I"), cert. denied, 510 U.S. 1020 (1993), we held that genuine issues of material fact remained as to whether PECo, acting in its role as fiduciary under the Employee Retirement Income Security Act ("ERISA"), had made affirmative material misrepresentations to its employee-beneficiaries by denying, or failing to disclose when asked, that it was seriously considering changes in its pension benefits program.  On remand, after a bench trial, the district court entered judgment for those members of the plaintiff class who had asked about a change in benefits after March 1, 1987, the date on which the district court found that serious consideration began. Kurz v. Philadelphia Elec. Co., No. 91-2771, slip op. at 24 (E.D.

Pa. May 13, 1994) ("District Ct. Op.").  We will apply the formulation of "serious consideration" established in Fischer v. Philadelphia Elec. Co., ___ F.3d ___ (3d Cir. 1996) ("Fischer II"), and on the basis of that analysis we will reverse the district court's decision and enter judgment for defendant PECo.

I.

This action stems from PECo's efforts to change its pension plan to provide more lucrative benefits to its employees. PECo announced this change on July 2, 1987, and implemented it on August 1, 1987.  The plaintiff class consists of various employees who retired between February 1, 1987, and July 1, 1987, and who were therefore ineligible for the plan.

On April 30, 1991, the plaintiffs filed suit in the U.S. District Court for the Eastern District of Pennsylvania, alleging that PECo had long known of its intent to change its pension package and had breached its fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, by representing that no change was under consideration.  The district court certified the class, then entered summary judgment for PECo.  In Kurz I, we reversed. Relying on our decision in Fischer I, we held that PECo could be liable for breach of fiduciary duty if it had made affirmative misrepresentations, such as denying that any change was being considered when in fact a change was under serious consideration. Kurz I, 994 F.2d at 139.  We remanded for a trial on the merits to determine, inter alia, when the plan came under serious consideration.  The district court found the following facts, the vast majority of which were stipulated.

Since 1977, PECo had conducted periodic reviews of its pension fund program as part of its ordinary course of business. PECo also participated in an annual or biannual survey that compared benefits packages at selected utilities.

On October 2, 1985, the consulting firm of Towers, Perrin, Forster & Crosby ("TPF&C") completed a study of PECo's pension benefit plan.  TPF&C concluded that the plan was well-funded and that the current rate of contributions would be sufficient to cover improvements in the benefits package.  At approximately the same time, Michael Crommie, PECo's Director of Employee Services, noted that PECo's comparative ranking in the benefits survey had fallen.  On June 23, 1986, Crommie sent a memorandum to Ronald Downs, Manager of the Industrial Relations Department, asking whether TPF&C should be asked to prepare a pension benefit study based on the survey results.  Downs responded, "Probably not, but suggest we consider after we see [this year's] survey results.  Obviously, some input from TPF&C will be required with regard to our recommended modifications to plan!"

In 1986, PECo took over the task of compiling the benefits survey.  Fred Beaver, an Administrative Assistant in the Personnel and Industrial Relations Department, was assigned the task of preparing the survey.  In February, 1987, Beaver received data from other utilities on their 1986 benefits levels.  Beaver concluded that PECo's position was below the mid-point for the industry.  After discussing the matter with his colleagues, Beaver suggested that PECo increase its benefits.  On February

27, 1987, Beaver contacted Donald Fleischer, a consultant at TPF&C, to discuss a possible pension plan change.

During March, 1987, the pace of deliberations increased. Charles L. Fritz, PECo's Vice President of Personnel and Industrial Relations, met with members of the Independent Group Association, PECo's unofficial employee representative, to discuss an increase in pension benefits. Fritz told them that the time was ripe to make significant changes in the pension plan. It was also during March that TPF&C began calculating the results of various changes in the pension benefit rate. TPF&C continued its work through April and May.

On May 6, 1987, Crommie and William Murdoch, a consultant with TPF&C, met to discuss competing alternatives for the amended plan. On May 11, Fritz reviewed the costs of the various alternatives with Murdoch. On May 20, TPF&C presented the results of its pension benefit study and recommended a pension increase. The TPF&C report discussed seven different proposals for changing the plan. By memorandum dated May 28, Fritz contacted J.L. Everett, III, PECo's Chief Executive Officer, and John H. Austin, Jr., PECo's President & Chief Operating Officer, to request permission to recommend a pension change to the Board of Directors. Everett and Austin were the only two individuals with authority to make recommendations to the Board. After receiving permission, Fritz prepared a recommendation, which was approved at the Board's June 22, 1987, meeting.

Based on this record, the district court concluded that PECo began seriously considering an increase in its pension benefit plan in March, 1987. It therefore set March 1, 1987, as the date on which PECo's duty to inform its employees arose. The district court entered judgment for those retirees who asked about pension benefits and retired after that date. The court entered judgment for PECo on the claims of those retirees who asked about pension benefits and retired before that date. This appeal followed.

II.

Our analysis proceeds within the confines of Fischer I and Fischer II. Liability turns on the materiality of PECo's representation that no change was being considered. Fischer I, 994 F.2d at 135. Under Fischer II, whether PECo's statement was a material "misrepresentation" turns on whether a change in benefits was in fact under serious consideration at the time the statement was made. Fischer II, ___ F.3d at ___ [typescript at 11–12]. "[S]erious consideration requires (1) a specific proposal (2) discussed for purposes of implementation (3) by senior management with the authority to implement the change." Id. at ___ [typescript at 15]. Based on this formulation, the district court's conclusion that serious consideration began on March 1, 1987, was incorrect.

Under the first Fischer II factor, we must examine the record for evidence of a specific proposal. No such proposal existed until May 20, 1987, when TPF&C presented the results of its pension benefits study. The TPF&C report noted that PECO's normal retirement benefits

were below average of the survey group . . ..
It commented that PECO needed to improve its
pension, [and it] recommend[ed] that
alternative pension improvements should take
into consideration 1. objectives for income
replacement at various pay levels, 2. the
company's desired competitive posture, 3.
cost implications for alternatives, 4.
posture with respect to introduction of
company-matching contribution in savings
plan, and 5. other benefits such as life
insurance and medical benefits.

District Ct. Op. at 12. Most importantly, the study "proposed seven alternate benefit improvements." Id. at 13.

This document marked the culmination of PECo's considerable efforts, with the help of TPF&C, to "gather[] information, develop[] strategies, and analyz[e] options." Fischer II, ___ F.3d at ___ [typescript at 16]. It provided specific proposals for the company to evaluate, and it outlined factors and principles for senior management to consider. This document was "sufficiently concrete to support consideration by senior management for the purpose of implementation." Id.[typescript at 16]. Indeed, it appears to have been intended for this very purpose. The TPF&C report therefore satisfies the first Fischer II factor.

By contrast, the laundry list of pre-May 20, 1987, events cited by the plaintiff class falls short of serious consideration. These activities fit comfortably within the categories of gathering information, developing strategies, and analyzing options that precede the drafting of a specific proposal. As we explained in Fischer II,

large corporate entities conduct regular or
on-going reviews of their benefit packages in
their ordinary course of business. These
entities employ individuals, including middle
and upper-level management employees, to
gather information and conduct reviews. The
periodic review process may also entail
contacting outside consultants or
commissioning studies. During the course of
their employment, the employees assigned
these tasks necessarily discuss their duties
and the results of their studies. These
discussions may include issues of
implementation. The employees may also make
recommendations to upper level management or
senior executives. As a general rule, such
operations will not constitute serious
consideration.

Fischer II, ___ F.3d at ___ [typescript at 17]. The efforts of Beaver, Crommie, Downs, and other individuals in PECo's seemingly far-flung personnel department illustrate this general rule. These individuals were simply performing their ordinary duties.

Their activities do not constitute serious consideration.

Because a specific proposal did not emerge until May 20, 1987, serious consideration could not have commenced before this date. The existence of a specific proposal, however, does not resolve matters.

> [The Fischer II] formulation does not turn on any single factor; the determination is inherently fact-specific. Kurz I, 994 F.2d at 139. Likewise, the factors themselves are not isolated criteria; the three interact and coalesce to form a composite picture of serious consideration.

Id. at ___ [typescript at 15-16]. Moreover, as we emphasized in Fischer II, "these factors do not establish a bright-line rule." Id. at ___ [typescript at 18]. We therefore turn to the second and third factors.

Under the second and third factors, we look to whether the specific proposal was being considered for implementation by senior management. As noted, supra, the contents of the proposal itself suggest that TPF&C intended its report for consideration by senior management for purposes of implementation. What is important for this phase of our inquiry, however, is whether PECo's senior management considered the document for purposes of implementation. In addition, consideration must have been by senior management with the authority to implement the change. This final requirement will not limit serious consideration to discussion by the Board of Directors: "It is sufficient for this factor that the plan be considered by those members of senior management with responsibility for the benefits area of the business, and who ultimately will make recommendations to the Board regarding benefits operations." Id. at ___ [typescript at 18].

Although the record is sparse on these points, the district court found that "[t]he persons having authority in 1987 to recommend that the PECO Board of Directors implement the pension plan changes were Everett and Austin." District Ct. Op.at 14. Based on this finding, we conclude that Everett and Austin were the appropriate cadre of senior management whose consideration is pertinent.

We must therefore determine when Everett and Austin began considering the specific proposal for purposes of implementation. The record indicates that on May 22, 1987, Everett and Austin submitted the TPF&C report to the Board of Directors. On May 28, Fritz sent a memorandum to Austin and Everett setting out the cost for one of the seven proposals and requesting their approval to proceed further. After receiving approval, Fritz prepared a recommendation for the Board. The Board made the decision to amend the plan on June 22, 1987.

We conclude that Fritz's May 28 memorandum and Everett and Austin's subsequent approval of his recommendation mark the beginning of serious consideration by senior management for purposes of implementation. We therefore hold that serious consideration began on May 28, 1987.

In reaching this conclusion, we stress yet again the

fact-specific nature of our analysis. Our holding in this case does not establish a bright-line rule based on management's approval of an employee's request to make a recommendation to the Board of Directors, just as in Kurz I we rejected a bright-line rule based on the formal proposal of a plan change to the Board of Directors. 994 F.2d at 139. Rather, serious consideration depends on "(1) a specific proposal (2) discussed for purposes of implementation (3) by senior management with the authority to implement the change." Fischer II, ___ F.3d at ___ [typescript at 15]. Here, these factors indicate that serious consideration began on May 28, 1987.

Based on this analysis, any employee who asked about changes in pension benefits after serious consideration began on May 28, 1987, but before the formal announcement of the change on July 2, 1987, received material misinformation. We will enter judgment for PECo on the claims of all employees who asked about a benefits change and retired before May 28. The record reveals, however, that some members of the plaintiff class retired after May 28, 1987. We must therefore consider the viability of their claims in light of PECo's statute of limitations defense.

ERISA § 413, 29 U.S.C. § 1113, establishes a combination of limitations provisions to govern breach of fiduciary duty claims. It provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. This section thus creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment.

Invoking § 413, PECo argues that the three year period for actual knowledge applies. PECo points out that the benefits change was formally announced on July 2, 1987. No lawsuit was filed until April 3, 1991, more than three and a half years later. In addition, the record contains statements by sixteen of the twenty members of the plaintiff class stating that they knew

of the plan change more than three years before the complaint was filed. PECo concludes that on these facts, the claim was untimely.

The plaintiff class responds by pointing to § 413's language on fraud and concealment, claiming it refers to the type of behavior in which PECo engaged. The district court adopted this position, explaining,

> The class action complaint clearly sounds in concealment. The heart of the complaint is PECO's concealment of the plan to implement the early retirement plan. PECO admits it had a policy of keeping such matters confidential and telling potential retirees that no such plans existed until formally announced.
>
> Section [413] provides a six year statute of limitation for cases of concealment, measured from the time the plaintiff discovers the breach or violation.
>
> Members of the plaintiffs' class discovered the breach or violation as early as June 1987. Suit was filed in this matter April 30, 1991, less than six years later.

District Ct. Op. at 25–26. We disagree with the district court's interpretation of the statute in the circumstances of this case.

The proper interpretation of § 413 presents an issue of law subject to plenary review. Board of Trustees of District No. 15 Machinists' Pension Fund v. Kahale Engineering Corp., 43 F.3d 852, 857 (3d Cir. 1994); Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991). We first hold that § 413(2)'s three year period applies on the facts of this case. We next hold that the district court misconstrued § 413's fraud and concealment language. We find that the claims of the plaintiff class are untimely and barred.

We begin with the selection of the 6 year or the 3 year limitations period as provided in subsections (1) and (2). We find that the 3 year "actual knowledge" provision of subsection (2) applies here. We first examined the meaning of § 413(2)'s "actual knowledge" in Gluck v. Unisys Corp., 960 F.2d 1168 (3d Cir. 1992). We interpreted the phrase "actual knowledge" to require actual knowledge of "all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." Id. at 1177 (citations omitted).

In the current case, all the material elements of a breach of fiduciary duty claim were patently obvious on July 2, 1987, the day PECo announced the pension increase. On that date, employees who had asked about benefits and retired before July 2 knew (1) benefits had been increased, (2) they were not eligible for the new package, and (3) no one had told them about the change even though they had asked. This was not a technical violation of ERISA, nor a cleverly concealed plan amendment.

PECo openly announced that certain employees would receive better benefits, and others would not. For those who did not qualify, the "harmful consequences" of the change were obvious. Gluck, 960 F.2d at 1177. No "opinions of experts" were needed. Id. Legal consultation was not required. Id. The plaintiffs had "knowledge of all relevant facts at least sufficient to give [them] knowledge that a fiduciary duty ha[d] been breached or ERISA provision violated." Id. at 1178. The plaintiff class therefore had actual knowledge as of July 2, 1987, and § 413's three year statute of limitations began to run on that date.

We next turn to the "fraud and concealment" language of § 413, which the district court applied to save the class claim. The district court apparently interpreted this language as referring to the type of ERISA claim in question. See District Ct. Op. at 25 ("[t]he class action complaint clearly sounds in concealment"). We disagree.

With rare exceptions, the courts of appeals have interpreted the final clause of § 413's as incorporating the federal doctrine of fraudulent concealment: The statute of limitations is tolled until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment. See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1253 (1st Cir.), petition for cert. filed, 65 U.S.L.W. 3001 (June 19, 1996); Barker v. American Mobil Power Corp., 64 F.3d 1397, 1401–02 (9th Cir. 1995); Larson v. Northrop Corp., 21 F.3d 1164, 1172–74 (D.C. Cir. 1994); Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1093–96 (7th Cir. 1992); Schaefer v. Arkansas Medical Soc'y, 853 F.2d 1487, 1491–92 (8th Cir. 1988); but see Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 919 (2d Cir. 1989) ("[f]or a breach of fiduciary duty involving fraud or concealment, the three year exception for actual knowledge does not apply, and a party has six years from the time it discovers the breach to bring an action").

Although we have yet to address this issue squarely, we have implicitly rejected the district court's interpretation in dictum. See Gluck, 960 F.2d at 1177 n.5 ("Although not implicated here, we note that the six–year limitation period of [§ 413(1)] does not protect defendants in instances involving concealment or fraud."). We now join our sister courts and hold that § 413's "fraud and concealment" language applies the federal common law discovery rule to ERISA breach of fiduciary duty claims. In other words, when a lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty, see Barker, 64 F.3d at 1402, the limitations period will run six years after the date of the claim's discovery. The relevant question is therefore not whether the complaint "sounds in concealment," but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.

Turning to the case at bar, we find nothing suggesting that fraud or concealment delayed the discovery of the breach of fiduciary duty claim. Serious consideration began on May 28, 1987. The plan was announced one month later on July 2, 1987.

Although again eschewing a bright-line rule, we suggest that this relatively brief period exemplifies the type of timely notification that companies should give their employees.  By publicly announcing its decision on July 2, 1987, PECo foreclosed any suggestion that it attempted to conceal its plans or engaged in a campaign of fraud to prevent the plaintiff class from suing for the alleged breach.  The claim, such as it was, lay bare for the world to see.  The federal discovery rule, and hence the six year fraud or concealment limitation period, does not apply.

We therefore hold that § 413's statute of limitations bars the fiduciary duty claims of those members of the plaintiff class who asked about a change in pension benefits and retired after May 28 but before July 2, 1987.  Given our disposition of the claims of class members who asked about benefits and retired before May 28, we will enter judgment for PECo on the entire class's breach of fiduciary duty claim.

Our treatment of the breach of fiduciary duty claim leaves the plaintiff class with two theories of recovery, discriminatory treatment under ERISA § 510, 29 U.S.C. § 1140, and equitable estoppel.  Neither theory has merit.  We reject the class's § 510 claim for the reasons announced in Fischer II, ___ F.3d at ___ [typescript at 26-27].  As to the equitable estoppel claim, our reasoning in Fischer II is equally controlling for those members who retired before May 28, 1987.  PECo correctly informed these class members that no pension increase was under serious consideration.  As a result, these class members cannot establish the first element of an estoppel claim, material misrepresentation.  See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994) (listing elements of equitable estoppel claim under ERISA); Fischer II, ___ F.3d at ___ [typescript at 25].  We also reject the equitable estoppel claim of the post-May 28 class members.  These plaintiffs have failed to establish the third ERISA estoppel element, extraordinary circumstances.  See Curcio, 33 F.3d at 235.

We have never clearly defined "extraordinary circumstances," relying instead on case law to establish its parameters.  Id.  A review of our precedents indicates that extraordinary circumstances do not exist in this case.  To support this element, we have previously required a showing of affirmative acts of fraud or similarly inequitable conduct by an employer.  See Rosen v. Hotel & Restaurant Employees & Bartenders Union, 637 F.2d 592, 598 (3d Cir. 1981) (holding that pension fund could not deny benefits to participant on grounds that participant's employer failed to pay required contributions where fund administrator allowed employee to pay contributions himself), cert. denied, 454 U.S. 898 (1981); see also Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1165 n.10 (3d Cir. 1990) (citing Rosen).  Elsewhere, we have focused on the network of misrepresentations that arises over an extended course of dealing between parties.  See Curcio, 33 F.3d at 238 (finding extraordinary circumstances where insurer misrepresented type of coverage available, informed patient that certain coverage would be provided, then disclaimed coverage); Smith v. Hartford Ins. Group, 6 F.3d 131, 142 (3d Cir. 1993) (suggesting extraordinary

circumstances might exist where plaintiff repeatedly and diligently inquired about benefits and defendant repeatedly misrepresented scope of coverage to plaintiff). We have also cited the vulnerability of particular plaintiffs. See Curcio, 33 F.3d at 238 (hospital patient denied coverage for substantial claim after hospital represented that coverage would exist); Smith, 6 F.3d at 142 (same); but see Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.) (rejecting estoppel where widow of terminal cancer victim sought increased life insurance benefits), cert. denied, 501 U.S. 1232 (1991).

These cases demonstrate that a plaintiff must do more than merely make out the "ordinary elements" of equitable estoppel to establish a claim for equitable estoppel under ERISA. Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1142 (3d Cir. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1540 (1994); Gridley, 924 F.2d at 1319. Because of these heightened requirements, we have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents. See Gillis, 4 F.3d at 1142 (denying recovery where plaintiffs claimed plan documents failed to disclose that severance pay would not be provided to employees who continued working for purchaser of corporate division); Gridley, 924 F.2d at 1319 (denying recovery despite omission from disclosure documents of requirement that employee be "actively at work" to qualify for increased life insurance benefits; employee was later denied increased benefits based on requirement).

Applying these principles to the current case, we find nothing to suggest that extraordinary circumstances exist. At best, plaintiffs have established the basic elements of an estoppel claim. There is no conduct suggesting that PECo sought to profit at the expense of its employees, no showing of repeated misrepresentations over time, no suggestion that plaintiffs are particularly vulnerable. In addition, we note that the district court made no finding of extraordinary circumstances. SeeDistrict Ct. Op. at 20, 24. The plaintiffs seem to have ignored the issue, despite the fact that they bear the burden of proof on each estoppel element. See Gillis, 4 F.3d at 1142. We therefore hold that extraordinary circumstances do not exist on the facts of this case, and we will enter judgment for the defendant on the post-May 28 class members' equitable estoppel claim.

### III.

The plaintiff class has failed to establish a valid claim for breach of fiduciary duty. Those class members who retired prior to May 28, 1987, did not receive material misinformation about a benefits change because no pension increase was then under serious consideration. The claims of the remaining class members are barred by the applicable statute of limitations. The class's equitable estoppel claim and ERISA § 510 claim also fail. We will therefore reverse the district court's judgment and enter judgment for defendant PECo.